IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02849-KLM

SHELLY LYNN ORTIVEZ,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court[1] on the **Social Security Administrative Record**

[#9],[2] filed January 30, 2014, in support of Plaintiff's Complaint [#1] seeking review of the

decision of Defendant Acting Commissioner of the Social Security Administration

("Defendant" or "Commissioner") denying Plaintiff's claim for supplemental security income

benefits pursuant to 20 C.F.R. § 416 ("Title XVI") of the Social Security Act, 42 U.S.C. §§

401-433 (the "Act").  On March 17, 2014, Plaintiff filed an Opening Brief [#14] (the "Brief").

On April 25, 2014, Defendant filed a Response  [#16] (the "Response").  On May 7, 2014,

Plaintiff filed a Reply Brief (the "Reply").   The Court has jurisdiction to review the

Commissioner's final decision under 42 U.S.C. § 405(g).  The Court has reviewed the entire

---

[1]  The parties consented to proceed before the undersigned for all proceedings pursuant
to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2.  *See generally Consent Form* [#21].

[2]   "[#9]" is an example of the convention the Court uses to identify the docket number
assigned to a specific paper by the Court's case management and electronic case filing system
(CM/ECF).  This convention is used throughout this Order.

case file and the applicable law and is sufficiently advised in the premises.  For the reasons

set forth below, this case is **REVERSED** and **REMANDED** to the Commissioner for further

fact finding.

## I.  Factual and Procedural Background

Plaintiff alleges that she became disabled on July 13, 2005 due to mental health

issues.  Tr. 98, 27-28.[3]  On May 23, 2012, Plaintiff filed for Title XVI supplemental security

income.  Tr.  98-105.  On May 10, 2013, a hearing was held before Administrative Law

Judge William Musseman (the "ALJ").  Tr. 24-32.  On June 11, 2013, the ALJ entered his

Decision, finding that Plaintiff was "not disabled under section 1614(a)(3)(A) of the Social

Security Act."  Tr. 20.  Plaintiff appealed to the Appeals Council, which denied her request

for review of the ALJ's decision.  Tr. 1-9.  Therefore, the ALJ's decision became a final

decision of the Commissioner for purposes of judicial review.  20 C.F.R. §§ 416.1481.

Born on November 27, 1969, Plaintiff was 42 years old when she filed her

application for supplemental security income.  Tr. 19.  The ALJ determined that, Plaintiff

"has a limited education and is able to communicate in English.".  Tr. 19.  The ALJ further

found  that Plaintiff "has no past relevant work" experience and that "[t]ransferabiltiy of job

skills is not an issue because [Plaintiff] does not have past relevant work" experience.  Tr.

19.  The ALJ found that Plaintiff suffers from bipolar I disorder, post-traumatic stress

disorder ("PTSD"), and obsessive compulsive disorder ("OCD").  Tr. 15.  However, the ALJ

also found that these impairments, individually or in combination, do not meet or medically

---

[3]  The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 9-1, 9-2, 9-3, 9-4, 9-5, 9-6, and 9-7, by the sequential transcript numbers instead of the separate docket numbers.

equal "the severity of one of the listed impairments in 20 CFR Part[4] 404, Subpart P,

Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)." Tr. 15.  As a result, the ALJ

concluded that Plaintiff has the residual functional capacity ("RFC")

> to perform a full range of work at all exertional levels but with the following
> nonexertional limitations: The [Plaintiff] can occasionally deal with the general
> public, requires work that does not involve complex tasks (i.e., requires work
> with an SVP 2[5] or less and involving only simple, rote and repetitive tasks),
> and must have work involving minimal supervision.

Tr. 17.  Based on the RFC and the testimony of Bruce Mafnusen (the "VE"), an impartial

vocational expert, the ALJ found that "there are jobs that exist in significant numbers in the

national economy that [Plaintiff] can perform . . . ." Tr. 19.  Specifically, based on the

testimony of the VE, the ALJ concluded that Plaintiff could perform the representative

occupations of assembler of small parts, cleaner/housekeeper, and mail sorter.  Tr. 20.  He

therefore found Plaintiff not disabled at step five of the sequential evaluation.  Tr. 20.

## II.  Standard of Review and Applicable Law

Pursuant to the Act:

> [T]he Social Security Administration is authorized to pay disability insurance
> benefits and Supplemental Security Income to persons who have a
> "disability." A person qualifies as disabled, and thereby eligible for such
> benefits, "only if his physical or mental impairment or impairments are of such
> severity that he is not only unable to do his previous work but cannot,
> considering his age, education, and work experience, engage in any other
> kind of substantial gainful work which exists in the national economy."

---

[4] The ALJ's use of the terms "Part" and "Subpart" is interchangeable with the Court's use of "§" to refer to provisions of the Act.

[5] "SVP" stands for "specific vocational preparation" and is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." Dictionary of Occupational Titles, App. C.II., 1991 WL 688702 (4th ed.1991).

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)).  Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(a); *see also Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (quoting 20 C.F.R. § 416.905(a)).  The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings.   42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination."  *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Court reviews a final decision by the Commissioner by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied."  *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010).  However, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Harper v. Colvin*, 528 F. App'x 887, 890 (10th Cir. 2013) (quoting *Barnett v. Apfel*, 231 F.3d

687, 689 (10th Cir. 2000)). In other words, the Court does not reexamine the issues *de novo*. *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F. 3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it *de novo*." *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

## A. Legal Standard

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits. *See* 20 C.F.R. § 416.920. The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent steps is unnecessary. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."). The Commissioner bears the burden of proof at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether a claimant is "presently engaged in substantial gainful activity." *Wall*, 561 F.3d at 1052 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)). If not, the ALJ considers at step two whether a claimant has "a medically severe impairment or impairments." *Id.* "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities." *Wall*, 561 F.3d at 1052 (citing 20 C.F.R. § 404.1521). Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the

5

"Listings."   *Wall*, 561 F.3d at 1052 (quoting *Allen*, 357 F.3d at 1142).   "If a claimant's

impairments are not equivalent to a listed impairment, the ALJ must consider, at step four,

whether a claimant's impairments prevent her from performing her past relevant work."

*Wall*, 561 F.3d at 1052 (citing *Allen*, 357 F.3d at 1142).   "Even if a claimant is so impaired,

the agency considers, at step five, whether she possesses the sufficient [RFC] to perform

other work in the national economy."   *Id.*

## B.    Substantial Evidence

An ALJ must consider all evidence and explain why he or she finds a claimant not

disabled.   *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).   However, the ALJ need

not specifically "reference everything in the administrative record."   *Wilson*, 602 F.3d at

1148.   "Substantial evidence is such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion."   *Id.* at 1140 (internal quotation marks omitted).   "It

requires more than a scintilla, but less than a preponderance."   *Lax v. Astrue*, 489 F.3d

1080, 1084 (10th Cir. 2007).   A decision by the ALJ is not based on substantial evidence

"if it is overwhelmed by other evidence in the record . . . ."   *Grogan v. Barnhart*, 399 F.3d

1257, 1261-62 (10th Cir. 2005).   In other words, the Court's determination of whether the

ALJ has supported his or her ruling with substantial evidence "must be based upon the

record taken as a whole."   *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

Further, evidence is not substantial if it "constitutes mere conclusion."   *Musgrave v.*

*Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).   In addition, "if the ALJ failed to apply the

correct legal test, there is a ground for reversal apart from a lack of substantial evidence."

*Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III.  Analysis

Plaintiff requests judicial review of the ALJ's decision denying her supplemental social security income benefits.  *Brief* [#14] at 1.  Specifically, Plaintiff argues that the ALJ erred by: (1) not providing proper reasons for giving more weight to the opinion of one nonexamining physician over the opinions of two examining physicians; (2) providing reasons for discounting the examining physicians' opinions that were contrary to evidence in the record; (3) failing to account for all of the mental limitations in the medical opinion on which he relied; and (4) failing to adequately account for all of the mental impairments that he found to exist.  *See generally id.*

### A.    Whether the ALJ Had Proper Reasons for Giving More Weight to the Opinion of Dr. Sexton

Plaintiff argues that the ALJ erred in connection with weighing the opinions of the three doctors involved in this case.  Beginning on September 17, 2011, Plaintiff received mental health treatment at Spanish Peaks Mental Health Center ("Spanish Peaks").  Tr. 188-213, 223-243.  During her first assessment at Spanish Peaks Mental Health Center, Plaintiff was assigned a GAF[6] score of 50.[7]  Tr. 193.  This assessment was completed by Lois Sandland, MSW, LCSW ("Sandland").  Throughout her treatment at Spanish Peaks,

---

[6] "The GAF is a 100-point scale divided into two numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162 n.1 (10th Cir. 2012).

[7] A GAF score of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Keyes-Zachary*, 695 F.3d at 1162 n.1 (quotation omitted).

Plaintiff was assigned a GAF score of 50-55.[8]  Tr. 193, 201, 208, 212.  While the ALJ

reviewed the various treatment notes provided by Spanish Peaks, the ALJ did not discuss

the opinions offered by Ms. Sandland, and Plaintiff does not contest that omission.  "An

opinion provided by a clinical social worker is not entitled to the same deference as an

opinion by a physician, because it is not an 'acceptable medical source.'"  *Rivera v. Colvin*,

2014 WL 5465068, at *4 (D. Colo Oct. 28, 2014) (quoting 20 C.F.R. § 416.913(d)(1) and

Social Security Ruling 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006)).

On June 6, 2012, Dr. Carlos Rodriguez ("Rodriguez") completed a "Med-9" form

regarding Plaintiff.  Tr. 222.  Dr. Rodriguez noted that Plaintiff's disability is "mental health"

and checked a box indicating that Plaintiff would be disabled for a period of 12 months.  Tr.

222.  Dr. Rodriguez also noted a disability onset date of a day that appears to be in

January 2011.[9]  Tr. 222.  There are no medical records accompanying this June 6, 2012

"Med-9" form.

As required as part of Plaintiff's application for supplemental security income, she

met with Dr. Richard B. Madsen ("Madsen") for a psychological evaluation on August 31,

2012. Tr. 214-219.  Dr. Madsen examined Plaintiff and reviewed her records from Spanish

Peaks.  Tr.  216-217.  During his exam of Plaintiff he noted the following:

> Affect and Mood.  Her affect is consistent with an anxious depressed mood.
> Thought Processes.  Thought processes are nonpsychotic.
> Thought Content.  Thought content is logical and relevant.

---

[8]  A GAF score of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  *Keyes-Zachary*, 695 F.3d at 1162 n.1 (quotation omitted).

[9]  This notation is difficult to read.

> Motor Behavior.  The client is ambulatory.  She appears restless.
> Speech.  Her speech was clear and intelligible, but lacked energy.
> Lethality.  No evidence [of] present suicidal hominian ideation.
> . . .
> Intellectual Functioning.  Level of intellectual functioning is most likely in the
> low average to borderline range. . . .

Tr. 216.   He concluded that Plaintiff has bipolar disorder, schizophrenia, and a panic

disorder with agoraphobia.   Tr. 217-218.   He also noted that she has symptoms of

depression and mania, as well as psychotic symptoms.  Tr. 215.  He assigned her a GAF

of 50.  Dr. Madsen concluded that Plaintiff's mental health issues "interfere significantly with

her ability to work."  Tr. 218.

On September 12, 2012, Dr. Sara Sexton ("Sexton"), a nonexamining agency doctor,

reviewed Plaintiff's records as a result of Plaintiff's application for supplemental security

income.  Tr. 43-46, 220-221.  Dr. Sexton reviewed records from Spanish Peaks and Dr.

Madsen.   Tr. 40-41.   Dr. Sexton found that Plaintiff has two severe disorders from the

Listings: (1) 12.04 Affective Disorders and (2) 12.06 Anxiety-Related Disorders.  Tr. 43.

She further concluded that Plaintiff had moderate difficulties in maintaining social

functioning and maintaining concentration.   Tr. 43.   Dr. Sexton found Plaintiff to be only

partially credible.  Tr. 44.  She noted:

> Clmt is credible in terns of alleging psychiatric disorders as she has been
> diagnosed w/and treated for same. However, she appears to underestimate
> her functional abilities. She says she can only pay attention for 5 minutes, but
> her attention and concentration were adequate for purposes of psych CE
> interview and mse. Her avoidance of others is understandable given her
> trauma hx, but she was able to interact appropriately w/Dr. Madsen - was
> described as a reliable informant.

Tr. 44.  Dr. Sexton found that Plaintiff would be "moderately limited" in completing a normal

workday and workweek without interruptions from psychologically based symptoms.  Tr.

9

46.  She explained that Plaintiff

> evidenced some limitations w/regard to her ability to concentrate at CE which may impact her as noted above. Also, episodic perceptual disturbances may impact her as noted above. Clmt states she prefers to avoid others; she may be mod. distracted by co-workers.

Tr. 46.  With regard to Plaintiff's ability to work, Dr. Sexton found that Plaintiff

> can follow simple instructions, sustain ordinary routines and make simple work related decisions. She should have limited interaction w/the general public. She can accept supervision and interact w/co-workers as long as contact is not frequent nor prolonged. She can adapt to work related situations as long as work demands are within MRFC limitations.

Tr. 46.  Dr. Sexton also noted that she gave little weight to "Dr. Madsen's statement that,

'All of these things interfere significantly w/her ability to work.' [Because] [t]his statement

is vague and does not afford clarification about what type or degree of 'interference.'" Tr.

44.

Pursuant to a request by Plaintiff's attorney, on April 11, 2013, Dr. Rodriguez

performed a clinical interview of Plaintiff.  Tr. 295-300.  As part of his evaluation, he

interviewed Plaintiff and reviewed records from Spanish Peaks and Dr. Madsen.  Tr. 295-

299.  Dr. Rodriguez concluded:

> In summary, a clinical interview indicates the presence of a 43-year-old female who presents with a history of limited education and difficulty with academic areas.  She relates in a concrete cognition fashion.   Her performance on the Mental Status Examination indicates the presence of cognitive deficits consistent with "Low Average to Borderline" intellectual functioning. In the clinical interview, Shelly presents with evidence of a Post-Traumatic Stress disorder secondary to a history of being abused by her step-father.  She has a longstanding history of depression and has also experienced psychotic features. She reports a history of chemical substance abuse in the past, but reports this abuse is now in remission.

Tr. 299.  Dr. Rodriguez concluded that Plaintiff has schizoaffective disorder, PTSD, and a

history of cocaine/cannabis/alcohol abuse.  Tr. 299.  He also noted that these disorders

"can be expected to persist beyond a 12-month period."  Tr. 299.  Dr. Rodriguez assigned

Plaintiff a GAF of 45.  Tr. 299.  As part of the April 22, 2013 evaluation, Dr. Rodriguez also

completed a form titled "Residual Functional Capacity Evaluation (Mental)."  Tr. 301-302.

The ALJ explained his decision to give significant weight to Dr. Sexton's opinion and

less weight to the opinions of Dr. Madsen and Dr. Rodriguez as follows:

> The undersigned gives significant weight to the opinion of the State agency
> psychological consultant and gives less weight to the opinions of the
> consultative examiners, Richard B. Madsen, Ph. D., and Carlos Rodriguez,
> Ph. D.  The State agency consultant opined that the claimant: could follow
> simple instructions, sustain ordinary routines and make simple work-related
> decisions; should have limited interaction with the general public; and could
> accept supervision and interact with co-workers as long as contact was not
> frequent or prolonged.
>
> In general, the State agency consultant's opinion is consistent with the
> evidence as a whole, while the opinions of Drs. Madsen and Rodriguez are
> not supported by the claimant's treatment records.  Although the claimant
> testified that she had difficulty thinking around others, the evidence does not
> support a finding that she requires no frequent or prolonged contact with co-
> workers; rather, the claimant's difficulty thinking is accounted for by limiting
> her to work with an SVP of 2 or less and involving only simple, rote and
> repetitive tasks.

Tr. 17-18.  The ALJ then reviewed Plaintiff's treatment records, discussing Plaintiff's mental

health history, medications, and her testimony.  Tr. 18-19.  The ALJ explained that his

weighing of the doctors' opinions was based on their consistency with the treatment

records.  Tr. 18.

The Court may not reweigh the evidence or substitute its judgment for that of the

ALJ and the Commissioner.  *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005);

*White v. Barnhart*, 287 F.3d 903, 905, 908, 909 (10th Cir. 2001).  However, the conclusions

reached by the ALJ must be reasonable and consistent with the evidence.  *See Glenn v.

Shalala*, 21 F.3d 983, 988 (10th Cir. 1994) (explaining that the Court must affirm if,

considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion).  Further, "[a]lthough the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'" *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)).

Notably, Dr. Sexton, an agency psychologist, never met with Plaintiff.  Instead, her opinion was based only on a review of Plaintiff's treatment records and Dr. Madsen's records.  "The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all."  *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(1), (2); 20 C.F.R. § 416.927(1), (2); Soc. Sec. R. 96-6p, 1996 WL 374180, at *2).  However, an ALJ may give more weight to a non-examining, consulting doctor, like Dr. Sexton, if he provides a "legally sufficient explanation for doing so."  *Id.*  Here, the ALJ's explanation was that Dr. Sexton's opinion "is consistent with the evidence as a whole, while the opinions of Drs. Madsen and Rodriguez are not supported by the claimant's treatment records."  Tr. 18.  Consistency with the record as a whole is a legitimate basis for determining the weight to be afforded an opinion.  *Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) ("In determining the weight to be given an opinion, the ALJ must consider the consistency between that opinion and the record as a whole.").  Plaintiff argues that "the ALJ did not explain what specific evidence was found to be consistent with Dr. Sexton's opinion."  *Brief* [#14] at 27.  Plaintiff further argues that this is simply a "conclusion in the guise of findings" that should be

rejected. *Id.* (quoting *Hardman v. Barnhart*, 362 F.3d 387, 391 (10th Cir. 2004)).  Here, the

ALJ explained the weight given to each opinion.  This brings the Court to Plaintiff's

argument that the ALJ's reason for discounting the examining physicians' opinions is

contrary to the evidence in the record.

**B.      Was the ALJ's Decision to Discount the Opinions of Dr. Madsen
        and Dr. Rodriguez Supported By Substantial Evidence?**

As noted above, Plaintiff contends that the ALJ erred in giving more weight to the

nonexamining doctor's opinion than he did to the two examining doctors' opinions.  "An ALJ

must evaluate every medical opinion in the record."  *Hamlin v. Barnhart*, 365 F.3d 1208,

1215 (10th Cir. 2004).  "If an ALJ intends to rely on a nontreating physician or examiner's

opinion, he must explain the weight he is giving to it."    *Id.* (citing 20 C.F.R.

§416.927(e)(2)(ii)).   The ALJ found that Dr. Madsen's opinion and Dr. Rodriguez's opinion

were "not supported by the claimant's treatment records."  Tr. 18. Here, none of the doctors

were treating physicians.  However, all medical opinions must be weighed as outlined in

20 C.F.R. § 416.927(c).  This provision requires an ALJ to consider: (1) the length of the

treatment relationship and the frequency of examination; (2) the nature and extent of the

treatment relationship, including the treatment provided and the kind of examination or

testing performed; (3) the degree to which the physician's opinion is supported by relevant

evidence; (4) consistency between the opinion and the record as a whole; (5) whether or

not the physician is a specialist in the area upon which an opinion is rendered; and (6) other

factors brought to the ALJ's attention which tend to support or contradict the opinion.  20

C.F.R. §416.927(c). Notably, the ALJ need not discuss each individual factor.  *See Oldham*

*v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).  Nevertheless, the ALJ must consider

every factor in determining the weight to assign a medical opinion, and "give good reasons

in the notice of determination or decision for the weight he ultimately assigns the opinion."

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (quotation marks, internal

brackets, and citation omitted).  Many of these factors do not play a significant role in this

case because the two examining doctors each had limited interactions with Plaintiff and all

three professionals specialize in mental healthcare.  However, the ALJ properly considered

consistency when he explained his reasons for not giving greater weight to the opinions of

Dr. Madsen and Dr. Rodriguez.  Tr. 17-18.

While the ALJ properly noted the consistency issue, he did not identify any portions

of each of the experts' opinions he found to be inconsistent with the treatment records.

Instead, he provided a detailed summary of the treatment records that supported his RFC.

Specifically he explained:

> The claimant's GAF score assessments from Spanish Peaks Mental Health (Spanish Peaks) range from 50 to 55, indicating or closely approaching only moderate symptoms or any moderate difficulty in social, occupational, or school functioning . . . .
>
> Mental status examinations have generally been good.  When the claimant was assessed at Spanish Peaks in October 2011, mental status examination revealed that she was oriented to person, place, time and situation.  Intellect was average.  Appearance/hygiene was neat.  Affect was normal range. Speech and eye contact were unremarkable.  Associations were intact. Judgment, attention, insight, short-term memory, recent past memory, and recent remote memory were also intact. [ ]
>
> Even when claimant was off medications, for example in July 2012, her mental status examination reflect[d] that she was alert and oriented in all four spheres.  Thoughts were linear, goal directed, logical and well organized without psychosis.  There was no psychomotor agitation, retardation or movement disorder.  Speech was clear, coherent, not pressured, logical, spontaneous and appropriate in rate, rhythm and volume.  Memory was fair. Hygiene was neat and clean.  There was no evidence of paranoia, hallucinations, loose associations, grandiosity, religiosity, delusions, thought

disorganization, confusion or flight of ideas.  There was no evidence of current suicide/homicide ideation or self-mutilative behaviors. Judgment and insight were considered fair to good.  Intellectual functioning was estimated at average. [ ]

More recently, in January 2013, the claimant was found to be alert and oriented x 3, with thoughts that [w]ere goal directed and organized without psychosis.   Memory was fair.   There was no psychomotor agitation, retardation, or movement disorder.   Speech was within normal limits. Appearance was neat and clean.  There was no imminent danger to the claimant or others. [ ]

In February 2012, the claimant was in a low mood.  However, a number of situational stressors were noted.  The claimant was very stressed about her upcoming court date.  She was stressed because she was going to turn her daughter in to DSS.   She had decided to stop taking a weight loss supplement.  Despite her situation, however, the claimant reported that she had been exercising and working on her crafts with her sister-in-law. [ ]

The claimant's treatment records indicate that she has a history of missing medication management appointments.   The claimant has also failed to obtain prescribed medications. [ ]

Tr. 18-19.

Plaintiff argues, "the ALJ's failure to identify specific inconsistent evidence prevents [the Court] from reviewing the evidentiary basis for the ALJ's conclusion."  *Brief* [#14] at 33. In *Silver v. Colvin*, 2014 WL 1292932 (D. Colo. March 31, 2014), the Court addressed a similar issue.  In that case, the ALJ gave greater weight to a nonexamining agency physician's opinion and less weight to an examining physician's opinion, finding that the nonexamining agency physician's opinion was more consistent with the record, "but [the ALJ] failed to meaningfully discuss which portions of [the] opinion were consistent (or inconsistent) with what evidence."  *Id.* at *4.  In *Silver*, the ALJ "extensively" discussed the opinion that was accorded less weight.  *Id.*  The Court concluded that the ALJ's failure to "articulate her reasoning for assigning Dr. Terry's opinion great weight" and to "discuss the

uncontroverted medical evidence developed after April 2009 as it related to Dr. Terry's opinion" constituted error.  The Court explained that "[a]lthough the comparison of the two opinions implicitly suggests that Dr. Terry's opinion does not suffer the same flaws as Dr. Campbell's opinion, the Court cannot attempt to reconstruct the ALJ's reasoning." (citation omitted)).  Here, the ALJ provided a thorough review of the portions of Plaintiff's treatment records that he considered, but he did not specifically link those records to the three opinions.  The Court finds this to be error.  Without the necessary findings, the Court must remand because proper review is not possible.  *Watkins*, 350 F.3d at 1300 ("We must remand because we cannot properly review the ALJ's decision without these necessary findings.").

The Court notes that the ALJ rejected Dr. Sexton's finding that Plaintiff "requires no frequent or prolonged contact with co-workers," explaining that "claimant's difficulty thinking is accounted for by limiting her to work with an SVP of 2 or less and involving only simply, rote and repetitive tasks."  Tr. 19.  However, this explanation of the ALJ's reason for not including this limitation in the RFC does not provide the Court any information to support his decision to afford the opinions of Dr. Madsen and Dr. Rodriguez less weight.

The Court cannot conclude that the ALJ's error was harmless. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir.2004) (concluding that, with certain "caveats, it . . . may be appropriate [in Social Security appeals] to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance, i.e., where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way").  While the ALJ provided a thorough summary of Plaintiff's

16

treatment records from Spanish Peaks, he did not link any part of that summary to the medical opinions.  Therefore, the Court cannot conclude that no reasonable factfinder would have reached a different conclusion.  The Court will not, therefore, address the remaining issues raised by Plaintiff because the ALJ's analysis on remand may impact how those issues are viewed.  *See Watkins*, 350 F.3d at 1299 ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand."); *see also Daniell v. Astrue*, 384 F.App'x. 798, 804 (10th Cir. 2010).

## IV.  Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the decision of the Commissioner that Plaintiff is not disabled is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

Dated:  November 17, 2014                    BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge